## PHELAN *v.* O'BRIEN.*

*(Circuit Court, E. D. Missouri.   October 4, 1882.)*

1. BANKRUPTCY—LIMITATION OF ACTION—REV. ST. § 5057.

> Where a deed of trust upon real estate, executed by A. to secure certain promissory notes, was foreclosed by B., who, as assignee in bankruptcy of the estate of C., held one of said notes, and all parties in interest were present or represented at the sale under said deed, and B., with the sanction of the court by which he had been appointed, became the purchaser for the benefit of C.'s estate, and with the knowledge of A. paid the holders of the other notes their *pro rata* of the purchase money, *held,* that proceedings instituted by A. against B. more than two years after the date of said sale, to set it aside, were barred by the limitations of the bankrupt act.

2. SAME—ESTOPPEL.

> *Held, also,* that the fact that B. represented to C. after the purchase that he would permit her to redeem the land upon payment of the debt, but without fixing any time for redemption, did not estop him from setting up the statute of limitations.

In Equity.

Appeal from the United States district court, sitting as a court in bankruptcy.

For statement of facts and report of the opinion of the district court see 12 FED. REP. 428.

*Donovan & Conroy,* for complainant in cross-bill.

*Walker & Walker, contra.*

McCRARY, C. J.   The respondent, Elizabeth O'Brien, brought a suit in equity in one of the state courts of this state to set aside a sale of certain lands to the complainant as assignee in bankruptcy of the Central Savings Bank, which sale was made under a deed of trust given by her to secure certain debts, including one due to the bankrupt.   The complainant filed his original bill herein to enjoin the proceedings in the state court, and a preliminary injunction was issued. Thereupon respondent filed her cross-bill herein, renewing substantially her suit as originally brought in the state court.

One defense to the cross-bill is that the cause of action therein set forth was barred by the provision of section 5057 of the Revised Statutes of the United States, which provides that "No suit, either at law or in equity, shall be maintained in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such as-

*Reported by B. F. Rex, Esq., of the St. Louis bar.

signee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

The assignee purchased the property at trustees' sale on the twentieth day of September, 1878, and on the twenty-third day of that month the trustee in the deed of trust conveyed the property by deed to him, as ·assignee. The suit in the state court to set aside the sale was commenced January 10, 1881, more than two years after the purchase by the assignee and the conveyance to him. The court is constrained to hold that the bar of the statute is a complete defense.

It has been repeatedly held by the supreme court of the United States that the limitation embodied in the section above quoted applies to all judicial contests between an assignee and other persons touching the property or rights of property of the bankrupt transferred to or vested in the assignee, where the interests are adverse, and have so existed for more than two years from the time when the cause of action accrued for or against the assignee. *Bailey* v. *Glover,* 21 Wall. 346; *Gifford* v. *Helms,* 98 U. S. 248.

It is suggested that the statute does not apply to a controversy between an assignee and other persons respecting property acquired by the assignee after the bankruptcy, and not conveyed to him by the original assignment. The *Case of Conant,* 5 Blatchf. 54, is cited to sustain this view, and it seems to do so. That case arose under the limitation clause of the bankruptcy act of 1841, which is substantially analogous to the provision now under consideration; and it holds that the limitation has no reference to contests growing out of the dealings of the assignee with the estate after it comes into his hands. A later ruling of the supreme court of the United States in the case of *Banks* v. *Ogden,* 2 Wall. 57, would seem to support very strongly the opposite view. The court in that case impliedly held that the limitation applies to a cause which accrued after the bankruptcy, and that it limited the time within which to commence an action to two years from the time when such cause of action accrued. The language of the court is as follows:

"The limitation certainly could not affect any suit, the cause of which accrued from the adverse possession taken after the bankruptcy, until the expiration of two years from the time of such possession."

In the case of *Norton* v. *De La Villebeuve,* 13 N. B. R. 304, precisely the opposite view of the statute was urged upon the consideration of the court. It was there insisted that the limitation only applies to new causes of action arising in favor of the assignee after

v.13,no.12—42

the bankruptcy, and not to those which had existed before the bankruptcy, and had come to the assignee by the assignment.

In the elaborate opinion announced by *Woods*, circuit judge, it was held to apply to both classes of cases. The court said:

"In our view, on all material claims and demands the cause of action accrues to the assignee at the day of the assignment; all others, from their maturity, or at the time when an action will lie; and he must sue within two years from these dates respectively."

The object and purpose of the limitation in question was to insure a speedy disposal of the bankrupt's property, and a prompt closing up of his estate. This object is declared by the supreme court, in *Bailey* v. *Glover, supra,* to be second only in importance to equality of distribution. It is easy to see that the construction of the statute insisted upon by counsel for respondent would defeat this object. If the ordinary statutes of limitation were to apply to all controversies arising between the assignee and other parties pending the proceedings in bankruptcy, the settlement of estates might be delayed almost indefinitely. The assignee threatened with a suit could not, with safety, close his administration until after the expiration of the limitation fixed by the General Statutes upon this subject. Suits might be instituted against him within the periods fixed by such statutes, but near the close of such periods, which might remain in the courts for many years. In fact, the limitation contained in the bankrupt act would, in many cases, prove ineffectual as a means of speeding the settlement of estates in bankruptcy, if it were not applied to controversies such as the one before us. Besides, the language of the statute is so general as not to admit of the limitation insisted upon. It applies to all suits, whether at law or in equity, touching any property or rights of property transferred to or vested in the assignee. It therefore includes suits touching property transferred to an assignee by the assignment, and also those touching property vested in such assignee either by the assignment or otherwise.

Proof has been offered to show that this assignee ought to be estopped from pleading the statute of limitations, because, after his purchase, he represented to the respondent that he would permit her to redeem the land upon payment of the debt. There is proof tending to show that such was the fact; but this alone is not sufficient to take the case out of the statute of limitations. No time for redemption was fixed, and no attempt to redeem is shown. The most that can be claimed is that respondent was to have the right or privilege to redeem indefinitely. If such was the agreement, it was void for

want of materiality, and not sufficient to prevent the running of the statute of limitations. *Taylor* v. *Reed*, Supr. Ct. of Illinois, June, 1882; *Kellogg* v. *Carrico*, 47 Mo. 157; *Mansur* v. *Willard*, 57 Mo. 347; *Medsker* v. *Swaney*, 45 Mo. 278; *Carter* v. *Abshire*, 48 Mo. 300; *Martin* v. *Smith*, 1 Dill. 96; *Langdon* v. *Doud*, 10 Allen, 433; Bigelow, Estoppel, 481–483.

The result is that, without considering the various questions touching the merits of the controversy, the decree of the district court must be affirmed, and it is so ordered.