## IRVIN v. CRAMMOND.

[No. 8,574.   Filed April 15, 1915.]

1. NAVIGABLE WATERS.—*Riparian Rights.—Accretion.*—Accretion is the process of gradual and imperceptible increase of land caused by the deposit of earth, sand or sediment thereon by contiguous waters, and is a source of title.   p. 542.

2. WATERS AND WATERCOURSES. — *Boundaries. — Title to Bed of Stream.*—A grant or conveyance of land bounded by a nonnavigable stream carries with it the bed of the stream to its center, unless a contrary intention is apparent from the grant or conveyance itself.   p. 542.

3. NAVIGABLE WATERS.—*Boundaries.—Title to Bed of Stream.*— Where land is bounded by the Ohio River on the Indiana side, the title of the owner extends to low-water mark.   p. 543.

4. BOUNDARIES.—*Highways.—Construction.*—A conveyance of land bounded by a highway carries title to the center of such highway in the absence of language indicating a contrary intention, and the rule applies to the conveyance of a city lot designated in the deed by its number and fronting feet and as extending back between parallel lines to a street or alley in the rear.   p. 543.

5. BOUNDARIES.—*Highways.—Construction.*—Where the owner of land dedicates to the public a highway all of which is on the margin of such land, he holds the fee to such highway subject only to

the easement of the public therein, and his conveyance of the land as bounded by the highway passes title to the fee the entire width of the highway, unless a contrary intention is expressed in the deed. p. 543.

6. BOUNDARIES. — Highways. — Watercourses.. — Construction. — Where the deed itself indicates, or all the facts properly in evidence indicate, that the grantor, by his conveyance of a lot abutting on a street occupying the margin of such lot and adjacent to the river bank, intended the river rather than the street as a boundary, such conveyance by inference of law carries title to the stream rather than to the center of the street. p. 546.

7. NAVIGABLE WATERS.—Boundaries.—Riparian Rights.—Accretion. —Where such a boundary line as a street exists between land conveyed and a river, the proprietor of the land so conveyed, not being the proprietor to the water's edge, can not claim the alluvion thereafter attaching between the street and the river. p. 546.

8. NAVIGABLE WATERS.—Boundaries.—Title to Accretion.—Where at the time an owner of land adjoining a river platted the land abutting on a highway between the platted land and the river, the highway was on the top of the river bank, but there was a second bank sixty-five feet from the first or remote bluff bank between which banks there was an unplatted strip that might have been cultivated though it was not then cultivated, a person to whom one of the platted lots was conveyed by deed describing it as being one hundred and twenty-five feet in depth from the line of the road running in front of the lot did not acquire title to the part of such unplatted strip lying in front of such lot, and could acquire no title to the accretion forming in front of such lot. p. 547.

From Perry Circuit Court; *William Ridley,* Judge.

Action by Mary E. Irvin against William D. Crammond. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Norman E. Patrick,* for appellant.

*Oscar C. Minor* and *John W. Ewing,* for appellee.

HOTTEL, C. J.—Appellant, by a complaint in three paragraphs filed in the Perry Circuit Court against appellee, sought to quiet title to, and recover possession of, the following real estate, viz., "A tract of ground forming that part of the bank or shore of the Ohio River, extending from Front Street, in the city of Cannelton, in said county and State, to low-water mark on the Ohio River and lying along

said Front Street immediately across said Front Street from and directly opposite to the following described real estate in the city of Cannelton, in said county and State, to wit: Lot number 5 on the plan of lots made by F. Y. Carlyle out of a portion of school lots 22 and 23 in fractional section 16, township 7 south, range 3 west." At appellee's request the court required appellant to file an abstract of title. Appellee then filed an answer in general denial. The cause was tried by the court and there was a finding and judgment for the appellee. Appellant filed a motion for new trial which was overruled and this ruling is here assigned as error and relied on for reversal. This motion is based on two grounds, viz., (1) the decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law.

Appellant's abstract of title shows that she claims the tract of ground described in her complaint by reason of its being an accretion to her lot in the city of Cannelton, above described as lot number 5, etc., "which said accretion was caused by the gradual deposit of earth, sand and sediment of all kinds by the waters of the Ohio River."

In order that we may make clear appellant's claim and contention in this case we will indicate the propositions of law on which it is based, viz., (1) Accretion is the

1. process of gradual and imperceptible increase of land caused by the deposit of earth, sand or sediment thereon by contiguous waters, and is held to be a source of title. 1 Am. and Eng. Ency. Law (2d ed.) 467; Tiedeman, Real Property §685; Anderson's Law Dict. (2) "A

2. grant or conveyance of land bounded by a nonnavigable stream carries with it the bed of the stream to its center, unless a contrary intention is manifest from the grant or conveyance itself." 5 Cyc. 897, and cases cited; Ross v. Faust (1876), 54 Ind. 471, 23 Am. Rep. 655; Brophy v. Richeson (1894), 137 Ind. 114, 119, 120, 36 N. E. 424. (3) There is some confusion in the decisions with reference

to the boundaries of lands lying upon nontidal navigable rivers, "Some, following the spirit of the common-law rule, hold that the right of a riparian owner extends to high-water mark only; others following the letter of the rule, extend his right to the middle or thread of the stream, subject to the public right of navigation; others limit his right to low-water mark; while others again limit him to the water's edge or the margin of the water at its ordinary stage" (5 Cyc. 895-897, and cases cited; *Ross* v. *Faust, supra*), but it is thoroughly settled that where land is bounded by the Ohio River on the Indiana side, the title of the owner extends to low-water mark. *Stinson* v. *Butler* (1837), 4 Blackf. 285; *Bainbridge* v. *Sherlock* (1868), 29 Ind. 364, 367, 95 Am. Dec. 644; *Martin* v. *City of Evansville* (1869), 32 Ind. 85, 86; *Sherlock* v. *Bainbridge* (1872), 41 Ind. 35, 13 Am. Rep. 302. (4) The conveyance of land bounded by a highway carries title to the center of such highway unless the language of the conveyance is such as to indicate a contrary intention. *Warbritton* v. *Demorett* (1891), 129 Ind. 346, 27 N. E. 730, 28 N. E. 613; *Cox* v. *Louisville, etc., R. Co.* (1874), 48 Ind. 178; 5 Cyc. 905, and cases cited. (5) Where a lot is designated in a deed by its number and fronting feet and extending back between parallel lines to a street or alley in the rear, the deed will be construed as conveying the grantor's title to the center of the highway, unless the language of the deed indicates a contrary intention. *Western Union Tel. Co.* v. *Krueger* (1905), 36 Ind. App. 348, 74 N. E. 25; *Ross* v. *Faust, supra;* 4 Am. and Eng. Ency. Law 813. (6) Where the owner of land dedicates to the public a highway all of which is on the margin of such land the owner of the land holds the fee in the highway, subject only to the easement of the public therein, and if such owner conveys his land by a deed which describes it as being bounded by the highway his conveyance will pass title to the fee the entire width of the highway, unless a contrary

intent is expressed in the deed. *Johnson* v. *Grenell* (1907), 188 N. Y. 407, 81 N. E. 161, 13 L. R. A. (N. S.) 551; *Haberman* v. *Baker* (1891), 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611; *Peck* v. *Smith* (1814), 1 Conn. 103, 6 Am. Dec. 216; *Johnson & Co.* v. *Arnold* (1893), 91 Ga. 659, 18 S. E. 370; *Thompson* v. *Major* (1878), 58 N. H. 242.

The correctness of these propositions of law is not disputed by appellee, but he insists, in effect, that appellant has failed to make a case to which they have application; that the burden was on appellant to show title in herself to the strip of real estate in controversy; that she was required to recover on the strength of her own title and not on the weakness of appellee's title; that the right to accretions from alluvion deposits along a stream depends on actual contiguity between the land of the claimant and the accretions claimed; that any separation of a claimant's lands from the alluvion deposits claimed defeats the claim, and hence that before appellant could successfully set up any claim to the real estate in controversy on account of its being accretion to her land made by alluvion deposits she was required to first show that she owned the shore to which or whereon the accretion was deposited. In answer to this contention appellant insists, in effect, that under the propositions of law above indicated, it must be conceded that the fee simple to the land in a city street or a country highway remains in the person or persons whose land has been appropriated for such street or highway, and that a conveyance by such person of the land adjoining such street or highway carries with it the fee to the center of the street or highway, in the absence of language in the deed manifesting a contrary intention; that the reason for this rule is based on public policy; its object being to prevent the existence of innumerable strips and gores of land along the margins of highways "to which the title, for generations, shall remain in abeyance, and then, upon the happening of some unexpected event, and one, consequently, not in ex-

press terms provided for in the title deeds, a bootless, almost objectless, litigation shall spring up, to vex and harass those who in good faith had supposed themselves secure from such embarrassment." *Ross* v. *Faust, supra*.

It is then argued that the legal inference which carries the title of a landowner adjoining a street to the center of such street is based on the assumption that different landowners own the land on the opposite sides of the street and that the right of each extends to the center of the street; that in a case where the road is entirely on the margin of the grantor's land and his title extends over and crosses the entire street, a grant of such abutting land necessarily carries with it the fee in the entire street and that, if such street is located on the banks of a river and abuts on the river, such grant will carry the fee in the land to the river; that in such case the same reason applies for inferring a grant of the fee to the entire width of the road and to the river as that which supports the inference of a conveyance of the fee to the center of the street in the other instance. The law proposition embraced in appellant's contention has some reason and authority for its support. *Johnson* v. *Grenell, supra; Delachaise* v. *Maginnis* (1892), 44 La. Ann. 1043, 11 South. 715; *Hagan* v. *Campbell* (1838), 8 Port. (Ala.) 9, 33 Am. Dec. 267; *Taylor* v. *Armstrong* (1863), 24 Ark. 102; *Kains* v. *Turville* (1871), 32 U. C. Q. B. 17; *Wait* v. *May* (1892), 48 Minn. 453, 51 N. W. 471; *Haberman* v. *Baker, supra*. We are of the opinion, however, that with one or two exceptions, the cases cited are distinguishable from the instant case and will not warrant the application of the principle contended for by appellant to its facts.

In the case of *Kains* v. *Turville, supra*, the grantor owned land on both sides of the stream. He sold a piece on the south side and described it as "extending to the water's edge of the creek then keeping along the water's edge of said creek with the stream until," etc., reserving a road

fifteen feet wide along the bank. The court held, in effect, that notwithstanding the line run by the surveyor was on top of the bank, the description contained in the deed showed that the meandering of the creek was intended as the boundary of the land conveyed. There was in that case evidence to the effect that the line run by the surveyor on the bank was run for the purpose of ascertaining the number of tillable acres in the tract of land sold. In the instant case there are no words in appellant's deed indicating an intention on the part of the grantor to make the river, rather than the highway, the boundary of the lot conveyed. On the contrary, appellant's lot is described in the conveyance as "being 70 feet front and rear by 125 feet in depth *from the line of the county road running in front of said lot,*" etc. (Our italics.) It is not necessary, however, that we should attempt to distinguish the cases relied on by appellant, except as hereinafter indicated. The case which lends most support to her contention is that of *Johnson* v. *Grenell, supra,* and in the report of that case in 13 L. R. A. (N. S.) 551, the authors in a note say of it. "While the weight of authority is undoubtedly contrary to the doctrine laid down in *Johnson* v. *Grenell,* its conclusion is supported by decisions in several jurisdictions."

Where the deed of conveyance itself indicates, or where all the facts properly in evidence indicate, that the grantor, by his conveyance of a lot abutting on a street occupying the margin of such lot and adjacent to the river bank, intended the river, rather than the street, as a boundary, we think such conveyance, by inference of law, should carry title to the stream rather than to the center of the street; but there can be no doubt that the great weight of authority warrants the statement that "wherever such a boundary line as a street existed between the land and the river, the proprietor of the lot could not claim the alluvion, for the plain reason that he was not the proprietor to the water's edge, and that there-

fore what was added by the water was not added to his land, but to the land which lay between his front boundary and the river." *Smith* v. *St. Louis Public Schools* (1860), 30 Mo. 290. See, also, *Haslett* v. *New Albany, etc., R. Co.* (1893), 7 Ind. App. 603, 34 N. E. 845; *Ellinger* v. *Missouri, etc., R. Co.* (1892), 112 Mo. 525, 20 S. W. 800; *Banks* v. *Ogden* (1864), 2 Wall. 57, 17 L. Ed. 818; *Ocean City Assn.* v. *Shriver* (1900), 64 N. J. L. 550, 46 Atl. 690, 51 L. R. A. 426, 432; *Illinois Cent. R. Co.* v. *Illinois* (1892), 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018, 1 R. C. L. 232, §6 and cases there cited. In the syllabus to the case of *Smith* v. *St. Louis Public Schools, supra,* it is stated that: "The principle upon which the right to alluvion is placed by the civil law which is the same in this respect as the Spanish and French law, and also the English common law, is that he who bears the burden of an acquisition is entitled to its incidental advantages; consequently the proprietor of a field bounded by a river being exposed to the danger of loss from its floods is entitled to the increment which from the same cause may be annexed to it. This rule is inapplicable, however, to what are termed limited fields, *agri limitati,* that is, such as have defined and fixed boundary other than the river, such as the streets of a town or city." In *Ellinger* v. *Missouri, etc., R. Co., supra,* the court said: "The limit of the boundary in the direction of the river, by an intervening street, prevents the proprietor from claiming the alluvion. 'It is not then,' says Judge Napton in *Smith* v. *St. Louis Public Schools, supra,* 'the *existence* of the road or causeway which deprives the owner of the alluvion, *but it is the fact that the road or causeway is the boundary of the land.*'" (Our italics.)

Appellant, however, contends that the Missouri cases cited should not be regarded as authority in this State for the reason that they are based on the "doctrine of limited 8. fields—*agri limitati*"; that, where a lot is bounded by a street, the limit of the lot is at the street line

and the proprietor thereof can have no kind of claim to the street or soil in it; that the reasoning of those cases is that, not having any title to the street or soil in it, the proprietor of a lot abutting on a street which separates it from the river has nothing to which the alluvion can attach and consequently is not entitled to the alluvion; that this doctrine can not be invoked in Indiana because in this State a conveyance of land bounded by a street carries title at least to the center of the street, in the absence of some reservation in the deed.

The cases, however, which support the proposition above announced are not limited to those jurisdictions which recognize the doctrine of limited fields. In Illinois, as in Indiana, the owner of a lot abutting on a street owns the fee to the center of the street, and in a case originating in that state, the case of *Banks* v. *Ogden, supra,* will be found the following language appropriate to the instant case: "Kinzie was the original owner of the whole fractional section. He retained every part of which he did not divest himself by deed or dedication. By the dedication of Sand Street he gave to the public the use and only the use of the land within the artificial and natural lines marked on the plat. By the conveyance of block 54 west of the street, he conveyed the fee of Sand Street within those lines to its center. On the east side of the street, opposite that block, he conveyed nothing, for he had nothing to convey. The fee, therefore, of the eastern half of the triangle which formed the street, remained in him." On this same subject this court in the case of *Haslett* v. *New Albany, etc., R. Co., supra,* 607, said: "The appellant is the owner of the fee of Upper Water Street to the middle of the street on the side adjacent to his lot, but it does not follow that, simply because there was no platted land or lots on the south side of the street, between the street and the river, he is also owner of the fee of the other half. The fee of the south side of the street remains in the original owners and their grantees, as do the.

riparian rights.'' See also, 1 R. C. L. 232, §6; 5 Cyc. 908, and cases cited, note 60.

It is true that in the case of *Haslett* v. *New Albany, etc., R. Co., supra,* there was unplatted land between the street and the river, and such fact distinguishes it from some of the cases relied on by appellant, but in such respect it can not be well distinguished from the instant case, as will appear from the following facts developed by the evidence in this case. In 1852 Francis Y. Carlyle platted school lots 22 and 23 into smaller lots, and sold the smaller lots to various parties, among them appellant's original grantor. The deed called for a lot east of the county road and contained in the description the language before indicated. In 1852 the county road (or Front Street in the city of Cannelton), was on the top of the river bank just where it was at the time of the trial of this cause, but in 1852 there was a second bank sixty-five feet from the first or remote bluff bank at which point there was a large cottonwood tree, which is still standing. This cottonwood tree stood at ordinary high-water mark in 1852 and between it and the highway in front of appellant's lot there was a strip of ground about sixty-five feet in width. It is true that this strip of ground was not then cultivated. It appears, however, that it might have been cultivated and, in any event, the fact remains that there was such a strip of ground between the street in question and the "ordinary high-water" of the river, and hence the principle contended for by appellant can have no application unless we can say that her conveyance included this strip of ground, and this would be against all authority. "It is fundamental in the law of accretions that the land to which they attach must be bounded by the water to entitle its owner to such increase. In the very nature of things, accretions depend upon actual contiguity, without any separation of the claimant's land from the accumulated alluvion by the lands of another, however narrow the intervening strip may be, or whatever the size of

the claimant's tract behind it. Therefore the owner of a lot bounded on one side by a street which is located along a river is not entitled as a riparian owner to accretions formed on the opposite side of the street, but if the boundary of the land extends to the water the owner is entitled to the gain by alluvion although the land is subject to the easement of an intervening public road." 1 R. C. L. 232, and see cases there cited. The great weight of authority in other jurisdictions and the decision of this court in the case of *Haslett* v. *New Albany, etc., R. Co., supra,* are, we think, conclusively against appellant's contention. The judgment below is therefore affirmed.

NOTE.—Reported in 108 N. E. 539. As to accretion and alluvion, see 35 Am. St. 307. Rule for apportionment of accretions between riparian proprietors, see Ann. Cas. 1914 A 481. As to the law of accretion to shore lands, see 58 L. R. A. 193. As to the effect of bounding grant on a river, see 42 L. R. A. 502. As to the effect of deed to carry title to water's edge where a street or highway intervene, see 13 L. R. A. (N. S.) 551. See, also, under (1) 29 Cyc. 348; 1 C. J. 730; (4) 13 Cyc. 629; (5) 13 Cyc. 492; (6) 5 Cyc. 908; (7, 8) 29 Cyc. 351.